## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| STEVEN PENNY, | : | Case No. 1:21-cv-562 |
| *Plaintiff,* | : | |
| | : | |
| vs. | : | |
| | : | |
| COTTINGHAM RETIREMENT | : | Judge Jeffery P. Hopkins |
| COMMUNITY, *et al.,* | : | |
| | : | |
| *Defendants.* | : | |

---

## OPINION AND ORDER

---

Plaintiff Steven Penny ("Mr. Penny") is a skilled dishwasher with over twenty years of experience. Relevant to this case, he is also a middle-aged white male with diabetes. Defendant Cottingham Retirement Community ("Cottingham") employed Mr. Penny from December 21, 2018, until it decided to terminate his employment on June 24, 2021. While Cottingham claims that it fired Mr. Penny due to his continuous display of poor hygiene at work, Mr. Penny contends that Cottingham and his supervisor, Defendant Rochelle Watson ("Ms. Watson"),[1] terminated him because of his race and disability.

As a result of his termination, Mr. Penny filed the present lawsuit against Cottingham and Ms. Watson. Pending before the Court are Defendants' Motion to Dismiss Plaintiff's Claim for "Unsatisfactory Work Conditions" (Doc. 10) (the "Partial Motion to Dismiss") and Motion for Summary Judgment (Doc. 42). For the reasons below, the Court **GRANTS** Defendants' Partial Motion to Dismiss (Doc. 10) and Motion for Summary Judgment (Doc.

---

[1] "Cottingham" and "Ms. Watson" are referred to herein collectively as "Defendants."

42) and **DISMISSES** Plaintiff's Amended Complaint (Doc. 4) **WITH PREJUDICE**. Consequently, the Court also **DENIES** all other pending motions in this case as **MOOT**.

## I.    BACKGROUND

Relevant to his claims *sub judice*, Mr. Penny identifies as a white male and states he receives medical treatment for diabetes. Doc. 43-1, PageID 862, 892–93. Cottingham hired Mr. Penny on December 21, 2018, as a dishwasher—a position in which he had close to twenty years of experience working at various places. *Id.* at PageID 871. Mr. Penny's principal duties at Cottingham were to run the dishwasher, clean his work area, and serve coffee to residents in the Cottingham dining area. *Id.* at PageID 874.

Mr. Penny had two different supervisors at Cottingham. His direct supervisor was the Production Manager, Ms. Watson. Doc. 43-2, PageID 936. As Production Manager, Ms. Watson supervised the cooks, salad preppers, and dishwashers (including Mr. Penny). *Id.* at PageID 936, 940. Critically, Ms. Watson's role did not include hiring or firing personnel. *Id.* at PageID 984–85. Mr. Penny's other supervisor, who conducted his annual performance reviews, was Janet Miller ("Ms. Miller"), Director of Dining Services. *Id.* at PageID 952; Docs. 52-5, 52-6. Ms. Miller oversaw all dining services, including dishwashing, and helped make hiring decisions concerning those personnel. Doc. 43-2, PageID 967.

During his rocky tenure at Cottingham, Mr. Penny states that he was bullied by Ms. Watson. In 2019, for example, Mr. Penny states that Ms. Watson gave him misleading instructions and scolded him for coming into her office. Doc. 52-2, PageID 1474–75. And in 2020, Mr. Penny states Ms. Watson did not give him frequent enough bathroom breaks and humiliated him in front of other workers. *Id.* at PageID 1475. It is obvious from the record that Mr. Penny and Ms. Watson did not get along.

2

At Cottingham, Mr. Penny underwent two performance reviews that were both completed by Ms. Miller. Docs. 52-5, 52-6. In his 2019 review, Mr. Penny received a 3 out of a possible score of 5, with a demerit concerning his hygiene. Doc. 52-5, PageID 1485. Specifically, Ms. Miller criticized Mr. Penny for failing to consistently shower and use deodorant, and wearing "the same pants, shirts and undershirts" every day. *Id.* Mr. Penny was directed to immediately improve his personal hygiene in the workplace. *Id.* at PageID 1487. In his 2020 review, Mr. Penny received a score of 2.7. Doc. 52-6. Ms. Miller again indicated that his personal hygiene was poor. *Id.* at PageID 1490. She expressed similar concerns to those contained in the prior report, adding that "residents and others have commented on your body odor and soiled shirts. It is important you present a neat, clean, and professional appearance." *Id.*

Ultimately, Cottingham's Executive Director, Shelley Owens, issued a notice of termination to Mr. Penny on June 24, 2021. Doc. 52-9. The notice indicated that Mr. Penny had failed to live up to expectations regarding his personal hygiene throughout his employment. *Id.* In sum, Cottingham stated that the reason Cottingham terminated its employment relationship with Mr. Penny was his "repeated refusal to follow directives regarding [his] appearance and hygiene." *Id.* at PageID 1568.

## II.  PROCEDURAL HISTORY

Mr. Penny filed this action in the Hamilton County Common Pleas Court on December 5, 2020, while he was still employed at Cottingham. Doc. 2. After he was fired, he then filed an Amended Complaint on August 11, 2021, alleging "ageism" (Count I), "bullying/harassment" (Count II), disability discrimination (Count III), race and gender discrimination (Count IV), retaliation (Count V), "[u]nsanitary work conditions" (Count VI),

3

and wrongful termination (Count VII). Doc. 4, PageID 172–74. Defendants removed the case to this Court on August 31, 2021 (Doc. 1) and filed an Answer to the Amended Complaint the next day. Doc. 5.

Currently before the Court are two motions which this Order will address. The first is a Partial Motion to Dismiss, Defendants filed on March 21, 2022. Doc. 10. The second is a Motion for Summary Judgment Defendants filed on September 30, 2022. Doc. 42. The Court will address both motions in that order.

## III.    EXPECTATIONS OF TRIAL ATTORNEYS

Attorneys who practice before this Court are held to the highest ethical and professional standards. At the outset, the Court expresses extreme disappointment with the conduct of the Trial Attorneys representing both Parties in this proceeding. Their prosecution of the case falls well short of the high standards attorneys practicing before this Court are expected to exhibit including, competent representation[2] and the asserting of only meritorious claims and defenses well supported by both law and fact.[3] *See* Ohio Rules of Professional Conduct (adopted in the Local Rules of this Court via Rule IV of the Model Rules of Disciplinary Enforcement). The concerns expressed by the Court will reveal themselves more thoroughly in the analysis that follows.

---

[2]  Rule 1.1 of the Ohio Rules of Professional Conduct, in relevant part, reads as follows: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

[3]  Similarly, the operative language of Rule 3.1 of the Ohio Rules of Professional Conduct, states that: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue in a proceeding, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law."

To begin, Mr. Penny's Amended Complaint lists seven vaguely stated counts for: (1) "Ageism"; (2) "Bullying/Harassment"; (3) "Disability"; (4) "Race and Gender"; (5) "Retaliation"; (6) "Unsanitary work conditions"; and (7) "Wrongful Termination and Retaliation." Doc. 4, PageID 172–74. His Amended Complaint also states that the first five are violations of Title VII of the Civil Rights Act of 1964, and the last two are violations of various Ohio laws. *Id.* However, the legal theories espoused by Mr. Penny in his opposition briefs responding to both Defendants' Partial Motion to Dismiss and Motion for Summary Judgment are incongruent with the Amended Complaint.

For example, the Amended Complaint asserts that Mr. Penny's unsanitary work conditions claim (Count VI) is grounded in "Ohio statutes mandating the employer provide safe working conditions, Ohio Constitution, Article II, Sections 33–35," without any explicit reference to other law. Doc. 4, PageID 173. By contrast, his opposition briefing to Defendants' Partial Motion to Dismiss falsely quotes his Amended Complaint as stating the following "Steven complains that Cottingham has violated Ohio State O.R. Code 4113.52; Ohio Constitution, Art. II, sections 34 and 35; 4101.12; 4121.13; 4121.17; 4107.07; 4107.09; and 4107.23." Doc. 12, PageID 204. Those quotes are not the same.

Similarly, Mr. Penny's Amended Complaint states that his "disability" claim is based on "Title VII law." Doc. 4, PageID 172. Whereas his opposition briefing to Defendants' Motion for Summary Judgment exclusively cites cases analyzing disability discrimination under Ohio law. Doc. 52, PageID 1437–42. It is settled law that "a plaintiff may not expand h[er] claims to assert new legal theories for the first time in response to a summary judgment motion." *Desporis v. Perrysburg Exempted Village School Dist.*, 455 F. App'x 659, 665–66 (6th Cir. 2012). A plaintiff must sufficiently raise claims and legal theories in the complaint to

provide a defendant "notice that it would have to defend" against that theory or claim. *Alomari v. Ohio Dept. of Public Safety*, 626 F. App'x 558, 565 (6th Cir. 2015). "The nature of the notice requirement is more demanding at the summary judgment stage than at earlier stages of the litigation, because by this point a plaintiff has had the opportunity to conduct discovery and to amend the complaint to reflect new theories." *Id.* The Court strongly disapproves of the fabrication of novel theories to support Mr. Penny's claims by his counsel in a response to dispositive motions.

Surprisingly, Defendants have not raised these issues. In fact, Defendants missed a material issue that could have perhaps relieved one of the named Defendants, Ms. Watson, of the expense, inconvenience, and anxiety brought by having had to litigate this case over the past three years. Additionally, Defendants' counsel failed to take the time needed to file a reply to support the Motion for Summary Judgment to fortify certain arguments previously presented, or to simply rebut those Mr. Penny made in his opposing response. When faced with such poor-quality pleadings, the Sixth Circuit gives these instructions for district courts to observe: "no magic words in the complaint are necessary to state a claim—courts must instead examine the substance of a plaintiff's allegations." *Alomari*, 626 F. App'x at 565. Towards that end, this Court will attempt to examine the substance of Mr. Penny's claims.

## IV. LAW AND ANALYSIS

The Court begins the analysis of the issues presented in this case by first addressing the Parties' arguments for and against Defendants' Partial Motion to Dismiss (Doc. 10).

### A. Defendants' Partial Motion to Dismiss Is Granted.

In the Partial Motion to Dismiss, Defendants ask the Court to dismiss Mr. Penny's unsanitary work environment claim (Count VI) under Fed. R. Civ. P. 12(b)(1) and 12(h)(3),

arguing Mr. Penny does not have subject matter jurisdiction to bring his claim because its exclusive remedy lies with the Ohio Bureau of Workers' Compensation. Doc. 10, PageID 196–98.

However, Defendants misstate the rule that applies. Based on the nature Defendants' arguments, their Partial Motion to Dismiss extends directly to the merits of the case. Thus, Fed. R. Civ. P. 12(b)(6) more appropriately applies in this situation. *See Moore v. Integra Lifesciences Corp.*, No. 1:20-cv-580, 2021 WL 274347, at *8 (S.D. Ohio Jan. 27, 2021) (dismissing the plaintiff's tort claim under Rule 12(b)(6) because "the Ohio Workers' Compensation Act" was the plaintiff's exclusive remedy), *report and recommendation adopted*, 2021 WL 1877126, at *1 (S.D. Ohio May 10, 2021); *Jones v. U.S.*, No. 3:23-CV-00184, 2023 WL 5673437, at *3 (M.D. Tenn. Aug. 31, 2023) (construing Rule 12(b)(1) motion as one on the merits under 12(b)(6)); *Truitt v. County of Wayne*, 148 F.3d 644, 647 (6th Cir. 1998) ("As it does not make any difference to the outcome of the case, we shall construe the district court's dismissal of Truitt's claims under Rule 12(b)(1) for lack of subject matter jurisdiction as a dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.").

Defendants' misapplication of the rules does not end there. While arguments on the merits are typically reserved for Rule 12(b)(6) motions, the pleadings were closed at the time Defendants filed their Partial Motion to Dismiss, *i.e.* meaning that Defendants had already filed an answer and were foreclosed under the Federal Rules of Civil Procedure from filing that particular response to the Amended Complaint. *See* Docs. 5, 10; Fed R. Civ. P. 12(b)–(c). However, because "district courts within our circuit have expressed a willingness to construe motions under 12(b)(6) as motions under 12(c) and vice versa," the Court construes Defendants' Partial Motion to Dismiss as a motion for judgment on the pleadings under Rule

12(c). *Lohner v. Lake Cnty., Tennessee*, No. 116CV02708STAEGB, 2017 WL 3160569, at *2 (W.D. Tenn. July 25, 2017) ("In light of this precedent, and in the interest of judicial economy, the Court construes Defendants' 12(b)(6) motion as a motion for judgment on the pleadings under Rule 12(c).") (collecting cases).

### i.    Standard of Review.

Turning next to the analysis under Federal Rule of Civil Procedure 12(c), the Rule provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is assessed "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)." *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021) (citations omitted). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Jackson v. Pro. Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). "A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Id.* (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

The similarities between the rules are apparent, making clear why courts in this circuit take comfort in applying them interchangeably.  Under Fed. R. Civ. P. 12(b)(6) a plaintiff must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). "To survive a motion to dismiss, in other words, [the

plaintiff] must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* (citations omitted).

In making that assessment, the court similarly must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation omitted). That is true, however, only as to factual allegations. The court need not accept as true Plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, the well-pled facts must be sufficient to "raise a right to relief above the speculative level," such that the asserted claim is "plausible on its face." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 546–47. Under the *Twombly/Iqbal* plausibility standard, courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

> ### ii. Plaintiff's Unsafe Work Environment Claim (Count VI) Fails as a Matter of Law.

Mr. Penny seeks to recover money against Defendants for allegedly causing him injury because, as he claims, Cottingham maintained "[u]nsanitary work conditions" (Count VI). Though his Amended Complaint makes no mention of the statute, Mr. Penny states that he is "relying on Section 4113.04" of the Ohio Revised Code to bring his unsafe work environment claim. Doc. 12, PageID 205. The Court cannot find any instance of a plaintiff

bringing a claim under this statute. And there is a good reason why—the statute does not confer upon an employee of a defendant-employer a claim that is cognizable in this Court.

Section 4113.04 of the Ohio Revised Code holds the title "[p]rima-facie evidence" and the statute provides for the following:

> If the employee of any employer referred to in section 4113.03 of the Revised Code receives any personal injury by reason of any defect or unsafe condition in any ways, works, boats, wharves, plant, machinery, appliances, or tools, except simple tools, in any way connected with or in any way used in the business of the employer, such employer is deemed to have had knowledge of such defect before and at the time such injury was so sustained, and when the fact of such defect is made to appear upon trial of an action brought by such employee or his personal or legal representatives against any such employer for damages on account of such injuries so received, the defect is prima-facie evidence of neglect on the part of such employer. The employer may show by way of defense that such defect was not discoverable in the exercise of ordinary care.

Ohio Rev. Code § 4113.04. Nothing in the text of § 4113.04 gives Mr. Penny an independent cause of action for recovery of money damages against Defendants.

The Sixth Circuit has understood § 4113.4 (formerly, Ohio Gen. Code § 6243) to mean that where an unsafe work condition connected with the employer's business occurs and an employee is injured, there is a presumption that the employer has knowledge of the defect "but the employer may show by way of defense that such defect was not discoverable in the exercise of ordinary care." *Nash v. Pa. R. Co.*, 60 F.2d 26, 27 (6th Cir. 1932) (interpreting Ohio Gen. Code § 6243, which is now Ohio Rev. Code § 4113.04). In other words, the statute merely shifts the burden of proof to the employer when a defect or unsafe working condition causes personal injury to an employee because it constitutes "prima facie evidence of neglect on the part of" an employer. After the burden shifts in such fashion, the employer must show that the defect was not discoverable in the exercise of ordinary care. What the statute does

not do is give Mr. Penny an independent cause of action to sue Defendants for a tort untethered to Ohio's worker's compensation scheme. Therefore, his claim must fail.

More importantly, the statute relied upon by Plaintiff in no way alters longstanding norms and traditions under Ohio comprehensive worker's compensation laws. Ohio law recognizes that "the immunity conferred by R.C. 4123.74 and Article II, Section 35, Ohio Constitution, for the vast majority of workplace injuries, a workers' compensation claim is an employee's exclusive remedy." *Hoyle v. DTJ Ents., Inc.*, 36 N.E.3d 122, 125–26 (Ohio 2015). In the rare instance, indeed "[w]hen an employee seeks damages resulting from an act or omission committed by the employer with the intent to injure, the claim arises outside of the employment relationship, and the workers' compensation system does not preempt the employee's cause of action." *Id.* at 126 (citation omitted.)

Within this comprehensive constitutional and statutory framework, Ohio Revised Code § 2745.01(A) incorporates the definition of an intentional tort committed by an employer from *Jones v. VIP Dev. Co.*, 472 N.E.2d 1046 (Ohio 1984), and requires a plaintiff to prove either *deliberate intent* to injure or a belief that injury was *substantially certain*. *Hoyle*, 36 N.E.3d at 127. "But R.C. 2745.01(B)[,]" as the Supreme Court of Ohio goes on to say, "equates 'substantially certain' with 'deliberate intent' to injure." *Id.* And the two options of proof under R.C. § 2745.01(A) are: (1) whether the employer acted with intent to injure or (2) whether the employer acted with deliberate intent to injure. *Id.* However, "[w]hat appears at first glance as two distinct bases for liability is revealed on closer examination to be one and the same." *Id.* (quoting *Rudisill v. Ford Motor Co.*, 709 F.3d 595, 603 (6th Cir.2013) (describing R.C. § 2745.01 as "a statute at war with itself")).

11

The Supreme Court of Ohio, after closely examining the history and text of Ohio Revised Code § 2745.01, further illuminates the point: "[t]he General Assembly's intent in enacting R.C. 2745.01 was to 'significantly restrict' recovery for employer intentional torts to situations in which the employer 'acts with specific intent to cause an injury.'" *Hoyle*, 36 N.E.3d at 127. "'[A]bsent a deliberate intent to injure another, an employer is not liable for a claim alleging an employer intentional tort, and the injured employee's exclusive remedy is within the workers' compensation system.'" *Id.* (quoting *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 983 N.E.2d 1253, 1258 (Ohio 2012)). Section 2745.01(C) of the Ohio Revised Code permits an employee to prove the employer's intent without direct evidence. *Hoyle*, 36 N.E.3d at 127.

Here, Mr. Penny has failed to plead or demonstrate through evidence a "deliberate intent to injure." In his Amended Complaint, Mr. Penny alleges only that he stood in "chemically infused water" while working as a dishwasher, and his employer did not fix the issue after he made multiple requests. Doc. 4, Page 173. At best, Mr. Penny has pled an act of omission on the part of his employer—or the negligent breach of a duty of care—which is exactly the type of claim Ohio's worker's compensation laws are intended to capture. *See Rogers v. Sure Conveyors, Inc.*, 510 F. Supp. 3d 515, 522 n.4 (N.D. Ohio 2021) (noting that Ohio "worker's compensation law precludes claims of employer negligence"). By no means, however, has he made the requisite showing that Defendants acted with deliberate *intent*—an intentional tort—to cause him injury.

Accordingly, because the Court finds that a workers' compensation claim is the exclusive remedy for Mr. Penny under Ohio law, his claim against Defendants for "[u]nsanitary work conditions" (Count VI)—being asserted in the Amended Complaint as an

intentional tort—is not plausible as nonactionable. Defendants' Motion to Dismiss under Rule 12(b)(6), which the Court in the interest of judicial economy has construed as a Rule 12(c) motion, is granted. Defendants are therefore entitled to judgment as a matter of law.

### B. Defendants' Motion for Summary Judgment Is Granted.

The Court next addresses Cottingham's Motion for Summary Judgment seeking to dismiss the remaining claims Mr. Penny asserts in the Amended Complaint. "The 'party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

But the non-moving party cannot defeat summary judgment merely by pointing to any factual dispute. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (bracket and emphases omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). In other words, the dispute must be "genuine" (*i.e.*, supported by evidence) and go to a "material fact" (*i.e.*, a fact that could matter to the outcome).

After reviewing the cited evidence, the Court must determine whether there is some "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52). In making that determination, though, the Court must view the evidence in the light most

13

favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

> i.  **Mr. Penny's Claims Against Defendant Rochelle Watson Fail as a Matter of Law.**

Stated plainly, Ms. Watson should not be a party to this case. Mr. Penny's Amended Complaint, charitably speaking, asserts seven remaining employment discrimination claims under Title VII, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), § 4112 of the Ohio Revised Code, and Ohio common law, against one of his former supervisors, Ms. Watson. *See generally*, Docs. 4, 52. The Court notes (with more than a modicum of frustration) that Defendants did not raise a critical defense to these claims readily available in support of Ms. Watson. Put simply, all Mr. Penny's employment discrimination claims asserted against Ms. Watson fail as a matter of law because she was not his employer. *Cf. P.I. & I. Motor Express, Inc. v. RLI Ins. Co.*, 499 F. Supp. 3d 486, 493–94 (N.D. Ohio 2020) ("There is little more frustrating for a district court judge than to have the parties jointly lead you down a wrong, and possibly unnecessary, path.").

The Sixth Circuit has long since determined that an individual cannot be held personally liable under Title VII, the ADEA, or the ADA. *See Wathen v. Gen. Elec. Co.*, 115 F.3d 400 (6th Cir 1997); *id.* at 404 n.6 (stating that Title VII, the ADEA, and the ADA define "employer" the same way); *Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007) ("[T]he ADA does not provide for personal liability for defendants sued in their individual capacities."). The same logic applies for claims under § 4112 of the Ohio Revised Code and wrongful termination in violation of public policy claims under Ohio law. *Norman v. RK*

14

*Holdings, LLP*, No. 2:22-CV-3704, 2024 WL 1347448, at *3 (S.D. Ohio Mar. 29, 2024) ("Because O.R.C. 4112.08(A), like Title VII, bars Plaintiff from bringing a claim for individual supervisor liability, in this case, his individual capacity claims against Mr. Amrine in Count I fail to state a claim upon which relief can be granted."); *Doody v. Centerior Energy Corp.*, 739 N.E.2d 851, 856 (Ohio App. 2000) (dismissing wrongful termination in violation of public policy claim against the defendant supervisor because she was not the plaintiff's employer).

 As such, this Court finds that Ms. Watson, as Mr. Penny's supervisor, cannot be held individually liable for employment discrimination under Title VII, the ADEA, the ADA, § 4112 of the Ohio Revised Code, or for wrongful termination in violation of public policy under Ohio common law. "An individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable" for employment discrimination under legal theories expressed by Mr. Penny. *Colston v. Cleveland Pub. Lib.*, 522 Fed. App'x. 332, 336 (6th Cir. 2013); *see also Williams v. Michigan*, 52 F. App'x. 723, 724 (6th Cir. 2002) (holding that individual supervisors cannot be for employment discrimination under the ADEA); *Jones v. Memphis Bd. of Edu.*, 1998 WL 898829, *1 (6th Cir. Dec. 16, 1998) (same); *Bailey v. E. Liverpool City Hosp.*, No. 4:14-cv-2809, 2015 WL 5102768, at *3–4 (N.D. Ohio Aug. 31, 2015) (same); *Williams v. McLemore*, 247 F. App'x at 8 (same for ADA); *Norman*, 2024 WL 1347448, at *3 (holding the same under O.R.C. § 4112); *Doddy*, 739 N.E.2d at 586 (holding the same for a wrongful termination claim). Mr. Penny's claims against Ms. Watson therefore fail.

### ii. Mr. Penny's Claims Against Defendant Cottingham All Fail.

The Court now turns to the remaining claims Mr. Penny asserts against Cottingham.

a.      Age Discrimination Under the ADEA (Count I).[4]

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff bringing an ADEA claim "must prove that age was a determining factor in the adverse action that the employer took against [them]." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993) (citing *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229–30 (6th Cir. 1990)). The Supreme Court instructs that the ADEA does not permit "a mixed-motives" claim; instead, a plaintiff alleging a violation of § 623(a) must prove by a preponderance of the evidence that "age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175, 177 (2009). The plaintiff may do so using either direct or circumstantial evidence. *Id.* at 177–78.

"Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc)). "In other words: [d]irect evidence is evidence that proves the existence of a fact without requiring any inferences." *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 530 (6th Cir. 2014) (quotes omitted). Indirect or circumstantial evidence on the other hand "is proof that does not on its face

---

[4] The Court notes that Mr. Penny has pled and argues in favor of an age discrimination claim against Cottingham under Title VII. Doc. 4, PageID 172; Doc. 52, PageID 1431. However, that claim is not proper and must be dismissed. *See Gulley v. Cnty. of Oakland*, 496 F. App'x 603, 604 n.1 (6th Cir. 2012) ("[Title VII] does not prohibit age discrimination. The [ADEA] . . . is the proper statute under which [a plaintiff] should [bring his] age discrimination claim.").

establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Alberty v. Columbus Twp.*, 730 F. App'x 352, 358 (6th Cir. 2018) (quoting *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009)). Because "[t]he direct evidence and [indirect] evidence paths are mutually exclusive," the Court must first assess whether Mr. Penny's age discrimination claim relies on direct or indirect evidence. *Scheick*, 766 F.3d at 529.

Direct evidence, *i.e.*, the allegedly unlawful statements or actions, "must come from decisionmakers to constitute evidence of discrimination." *Geiger*, 579 F.3d at 620–21. The Sixth Circuit instructs that "'[s]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself,' [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus.'" *Id.* at 621 (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)). Numerous courts in this Circuit have found that statements by supervisors with no involvement in the decision to terminate an employee do not constitute direct evidence of discrimination. *See Brown v. Packaging Corp. of Am.*, 338 F.3d 586, 589–90 (6th Cir. 2003) (statement by supervisor with no involvement in the decision was not direct evidence of age discrimination); *Watrobski v. FCA US, LLC*, No. 16-cv-11632, 2018 WL 994264, at *4 (E.D. Mich. Feb. 21, 2018) (finding that "statements by individuals with no role in [a plaintiff's] termination" are circumstantial evidence).

In his briefing, Mr. Penny relies exclusively on one statement which he alleges Ms. Watson made when telling him that "she can always replace [him] with someone younger." Doc. 52, PageID 1432; Doc. 52-14, PageID 1722. On its face, this comment is not ambiguous and, even if believed, does not automatically require that an inference be drawn that age was the but-for cause of the decision to terminate Mr. Penny's employment. *See Scheick v. Tecumseh*

*Pub. Schs.*, 766 F.3d 523, 531 (6th Cir. 2014) (finding that one decisionmaker's comment about wanting "someone younger" is direct evidence of age discrimination). However, it is evident that Ms. Watson was not involved in the decision to terminate Mr. Penny.

In her deposition, Ms. Watson testified that she was not involved in the decision to fire (or hire) Mr. Penny. Doc. 52-13, PageID 1655–56. She also testified that she did not request that Cottingham terminate Penny. *Id.* The documentation related to Mr. Penny's termination backs those statements up. Mr. Penny's two performance reviews indicate that Janet Miller—not Ms. Watson—was Mr. Penny's main supervisor, and that Janet Miller completed both of Mr. Penny's performance reviews. *See* Docs. 52-5, 52-6. In fact, the 2019 performance review was only signed by Mr. Penny, Ms. Miller, and Cottingham's Executive Director, Shelley Owens. Doc. 52-5, PageID 1487.[5] Ms. Watson's signature and name are nowhere to be found on either of Mr. Penny's performance reviews.

Moreover, the letter terminating Mr. Penny's employment related to poor personal hygiene was written and signed by Shelley Owens. Doc. 52-9, PageID 1568. The notice of termination references the 2020 performance review completed by Ms. Miller, as well as Ms. Miller's (not Ms. Watson's) repeated instruction for Mr. Penny to wear unsoiled clothes, shower, and wear deodorant. *Id.* at PageID 1567–68.

Based on the above, the Court finds that there is no genuine dispute of material fact concerning whether Ms. Watson was involved in the decision to terminate Mr. Penny. The

---

[5] For reasons unclear to the Court, Mr. Penny's 2020 performance review was completed but is unsigned. Defendants claim that Mr. Penny indicated in his interrogatory response that he "refused to sign the evaluation because he disagreed with his supervisors' criticisms," but Defendants failed to attach any of the interrogatories or the responses they received to their Motion for Summary Judgment. *See* Doc. 42, PageID 840.

record clearly reflects that she was not. Even when viewing the evidence in the light most favorable to Mr. Penny, as we must at this stage of the proceedings, the Court still finds, on this record that Ms. Watson's statement was not the "but-for cause" of the decision to terminate Mr. Penny. His age discrimination claim (Count I) thus fails to have any merit.

### b.    Hostile Work Environment (Count II).[6]

Mr. Penny, a white male with diabetes, argues that he fell victim to a hostile work environment and that he has a valid claim based on his race and disability. Doc. 52, PageID 1434–36, 1463. However, Mr. Penny has failed to demonstrate a sufficient dispute of material fact to advance his claim.

To establish a prima facie claim of a hostile work environment based on race or disability, the plaintiff must show that (1) he is a member of a protected class, (2) he was subjected to harassment, (3) the harassment was based on his membership in the protected class, (4) the harassment affected a term of employment or unreasonably interfered with his work performance, and (5) the employer either knew or should have known about the harassment and failed to take corrective actions. *See Bryant v. McDonough*, 72 F.4th 149, 151 (6th Cir. 2023) (disability) (observing elements are the same for RA and Title VII claims); *Trepka v. Bd. of Educ. of the Cleveland City Sch. Dist.*, 28 F. App'x 455, 461 (6th Cir. 2002) (observing the elements are the same for ADA and Title VII claims); *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 411 (6th Cir. 2021) (sex); *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482 (6th

---

[6] Even though Mr. Penny argues in his briefing that his bullying and harassment claims are two separate causes of action, Mr. Penny lists them as one cause of action in his Amended Complaint. Doc. 4, PageID 172. In addition, the facts that underlie the claims concern harassment by Ms. Watson due to his race and disability. *See* Doc. 52, PageID 1435 (stating that Mr. Penny suffered bullying due to his race); Doc. 52, PageID 1464 (stating that Mr. Penny was subject to a hostile work environment based on his race and disability). Accordingly, the Court construes them as "hostile work environment" claims.

Cir. 2020) (race or national origin).[7] The Supreme Court has held that hostile work environment cases require a plaintiff to demonstrate their workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotation marks and citations omitted).

In determining whether the workplace is subjectively and objectively hostile, a court should consider the totality of the circumstances, which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. A plaintiff must present evidence that the alleged harassment would not have occurred but for the plaintiff's membership in a protected class or disability. *See Bradley v. Arwood*, 705 F. App'x 411, 418 (6th Cir. 2017).

The Sixth Circuit instructs trial courts to "carefully distinguish between lawful conduct—even if insensitive—and discriminatory harassment." *Vitt v. City of Cincinnati*, 97 F. App'x 634, 638 (6th Cir. 2004). As such, there is "a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory." *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017) (noting that, in many cases, overtly discriminatory statements and racial slurs did not create an actionable hostile work environment). Title VII does "not prohibit all verbal or physical harassment in the work place; it is directed only at 'discriminat[ion] . . . because of'" protected characteristics. *Khalaf*, 973 F.3d at 484 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). "Mere disrespect or antipathy

---

[7] While Mr. Penny argues that his claims against Cottingham for bullying and harassment relate to his disability and are actionable under Title VII, the claims are more accurately assessed under the ADA. *See Trepka*, 28 F. App'x at 461. Because the elements of both are the same, the distinction is without meaning.

will not be actionable under the statute unless a plaintiff can prove that such was motivated by discriminatory animus." *Id.* Moreover, the "conduct of jerks, bullies, and persecutors is simply not actionable under Title VII unless they are acting because of the victim's [protected status]." *Wasek v. ArrowEnergy Servs., Inc.*, 682 F.3d 463, 467 (6th Cir. 2012).

As for Mr. Penny's claim of a racially hostile work environment, the Sixth Circuit further instructs that a plaintiff fails to demonstrate a dispute of material fact concerning a hostile work environment where "there were some comments referencing race, [but] they were infrequent and isolated." *Vitt*, 97 F. App'x at 638. In *Vitt*, a white female plaintiff alleged that her Black supervisor said that "all white people are prejudiced," did not take any action when Black coworkers made inappropriate comments about race, and generally treated her differently than her Black coworkers. *Id.* at 636–37. At one point, she even found the words "white bitch" scratched on her desktop. *Id.* at 637. The Sixth Circuit found that because the comments referencing the plaintiff's race were "infrequent and isolated," the evidence tended to show that the plaintiff and her supervisor "had an interpersonal conflict," that did not amount to "severe or pervasive racial harassment." *Id.* at 638. As such, the Sixth Circuit affirmed the trial court's ruling that the plaintiff's hostile work environment claim was without merit. *Id.*

Much like appeals court held in *Vitt*, Mr. Penny has failed to present the kind of proof that will enable him to establish a hostile work environment based on race. Mr. Penny contends that "he suffered from treatment received by his supervisor, Rochelle Watson, [a Black female,] often by random accusation, uttered at him without cause on a daily basis." Doc. 52, PageID 1435. For example, Mr. Penny states that Ms. Watson "humiliate[d] [him] in public" by saying that he "should not be putting the dish machine controls on low," loud

21

enough for others to hear. Doc. 52-2, PageID 1474. Allegations such as these are insufficient. Mr. Penny has not identified a single comment made by Ms. Watson—or any other Cottingham employee or supervisor—that referenced or alluded to his race. While the examples of public correction or reprimand of an employee may be disrespectful and bad management, these behaviors do not amount to anything more than an interpersonal conflict. They do not constitute pervasive racial harassment that has been deemed actionable by the Sixth Circuit. In sum, Mr. Penny has failed to show that his race was the "but-for" cause of any discrimination he received. Therefore, his assertion that Cottingham subjected him to a racially hostile work environment also fails.

For these same reasons, Mr. Penny's claims that he was subjected to a hostile work environment based on his disability also fail. Mr. Penny claims argues that Ms. Watson called him a "cripple" at one point but fails to identify when Ms. Watson allegedly made that statement. Doc. 52-14, PageID 1724. This single, intemporal, and remote comment appears to have been nothing more than an isolated incident that does not amount to the sort of "extreme" or "pervasive" conduct needed to establish a hostile work environment claim tied to Mr. Penny's disability. *See Burnett v. Tyco Corp.*, 203 F.3d 980, 984–85 (6th Cir. 2000) (holding three incidents over six months did not qualify as "commonplace, ongoing, or continuing," and therefore were not sufficiently pervasive to establish a genuine issue of material fact).[8]

---

[8] *See also Hunter v. Gen. Motors LLC*, 807 Fed. App'x 540, 545 (6th Cir. 2020) (holding that the "discriminatory" statements in question in that case were not "sufficiently severe"); *Black v. Zaring Homes*, Inc., 104 F.3d 822, 824–27 (6th Cir. 1997) (reversing jury verdict for plaintiff who alleged she was subjected to a hostile work environment; finding on appeal that despite allegations the plaintiff was subjected to various discriminatory comments and sexual innuendo at bi-weekly meetings from July to October 1993, was told that she was "paid great money for a woman," and was referred to as a "broad," defendant was entitled to judgment as a matter

Under the totality of the circumstances, the evidence presented does not create an issue of material fact as to whether the conduct alleged was sufficiently severe and pervasive to create a hostile work environment. Thus, Mr. Penny has not met his relatively high bar to establish his race- or disability-based hostile work environment claims.

c. **Disability Discrimination Under the Ohio Revised Code (Count III).**

It is unclear whether Mr. Penny's disability discrimination is based on federal or state law from the face of the Amended Complaint in all its deficiencies. However, in his briefing Mr. Penny argues in favor of his disability discrimination claim under § 4112 of the Ohio Revised Code. Doc. 52, PageID 1437. Claims under § 4112 of the Ohio Revised Code are analyzed the same as federal claims under the ADA. *See Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 872 (6th Cir. 2007).

Mr. Penny advances a theory of disability discrimination predicated on circumstantial evidence. Doc. 52, PageID 1437–42 (citing the "*McDonnell Douglas* analysis"). Courts in the Sixth Circuit use the *McDonnell Douglas* burden-shifting framework when a plaintiff couches his claims of disability discrimination under the ADA on circumstantial evidence. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*,

---

of law because under the totality of the circumstances the comments were merely offensive and were therefore insufficient to support the jury's verdict, and deeming important the fact that "most of the comments were not directed at plaintiff"); *Mast v. IMCO Recycling of Ohio, Inc.*, 58 Fed. App'x 116, 120–21 (6th Cir. Feb.3, 2003) (holding that "three or four incidents over several months" were not sufficiently severe or pervasive, even though they included "offensive comments directed at women in general" and an assault against plaintiff that plaintiff admitted not motivated by gender); *Farra v. Gen. Motors Corp.*, 163 F. Supp. 2d 894, 909 (S.D. Ohio 2001) (sixteen alleged incidents involving verbal abuse, vulgar gestures, and threatening behavior over twenty months was neither severe nor pervasive enough to establish prima facie case of hostile work environment); *Stone v. West*, 133 F. Supp. 2d 972, 987 (E.D. Mich. 2001) (plaintiff's complaints about colleague calling her "bitch" and saying she had to review plaintiff's work each night to see what she had done wrong were "nothing more than a handful of more-or-less petty quarrels . . . [and were] not the sort of 'extreme' or 'pervasive' conduct needed to establish a hostile work environment claim . . .").

411 U.S. 792 (1973)). To establish a prima facie case, an employee must demonstrate that (1) they have a disability, (2) they are otherwise qualified for the job "with or without reasonable accommodation," (3) they have "suffered an adverse employment decision," (4) their employer "knew or had reason to know" of their disability, and (5) their position remained open, or they were replaced. *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017) (quoting *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011)). If the employee establishes a prima facie case, the burden shifts to the employer to "demonstrate that there was a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (citing *Whitfield*, 639 F.3d at 259). The burden then shifts back to the employee to show that the purported nondiscriminatory reason "was actually a pretext designed to mask discrimination." *Id.* (citing *Whitfield*, 639 F.3d at 259).

Mr. Penny has an easy time establishing the first three prima facie elements because it is undisputed that: (1) Mr. Penny has a disability; (2) he is qualified for the job of dishwasher; and (3) and he suffered an adverse employment decision based on his termination. His disability discrimination claim falls apart, however, because he has failed proffer evidence to establish elements four and five of the *McDonnell Douglas* framework.

Regarding element four, Mr. Penny has failed to show that Cottingham knew or had reason to know of his diabetes diagnosis. Although an employee is not required to use the word "disabled" to put their employer on notice, the employer still must "know enough information about the employee's condition to conclude that he is disabled. Relevant information could include, among other things, a diagnosis, a treatment plan, apparent severe symptoms, and physician-imposed work restrictions." *Cady v. Remington Arms Co.*, 665 F. App'x 413, 417–18 (6th Cir. 2016) (internal citation omitted) (noting that there is not likely

24

sufficient notice "[i]f the sole evidence of notice [is] a vague assertion of concern"). "The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999).

Further, the Sixth Circuit "makes clear that an employee cannot be considered to have been fired 'on the basis of disability' unless the individual decision-maker who fired the individual had knowledge of that disability." *Nilles v. Givaudan Flavors Corp.*, 521 F. App'x 364, 368 (6th Cir. 2013) (collecting cases). A decisionmaker must be aware of the "specifics of an employee's disabilities or restrictions." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016) (citing *Arthur v. Am. Showa, Inc.*, 625 F. App'x 704, 708 (6th Cir. 2015)). "The burden lies with the plaintiff to show that a decisionmaker involved in his termination decision knew of his alleged disability at the time of termination." *Morton v. Greater Clev. Reg'l Transit Auth.*, No. 23-3660, 2024 WL 2765835, at *4 (6th Cir. May 30, 2024).

Mr. Penny clams that he placed Cottingham on notice of his disability when he included that information on his employment application. Doc. 52, PageID 1437; Doc. 52-2, PageID 1475 (stating that he told Cottingham of his disability "on my application when it hired me"). However, Mr. Penny's contention is unsupported by the record. His employment application makes absolutely no mention of his diabetes diagnosis. *See generally*, Doc. 52-10. Mr. Penny states in an affidavit that he told Ms. Watson that he was diabetic on April 19, 2020—or about 17 months after he applied to Cottingham. *Compare* Doc. 52-2, PageID 1475 *with* Doc. 52-10, PageID 1572. However, he does not claim or present evidence that he told anyone else about his diagnosis. The Court therefore finds that Mr. Penny has shown that the

only supervisor at Cottingham he may have reported he was diabetic to is Ms. Watson.[9] Because, as discussed above, Ms. Watson was not a decisionmaker in his termination, Mr. Penny has failed to establish that a decisionmaker involved in his termination knew of his alleged disability. *Supra*, Section (IV)(B)(ii)(a). Like the other claims asserted in the Amended Complaint, Mr. Penny's disability claim also fails.

In addition, Mr. Penny cannot meet element five because he has not presented any evidence that his position remained open or that he was replaced. "For purposes of articulating a prima facie claim under the ADA, an 'employee is replaced only where another employee is hired or reassigned to perform [his] duties.'" *Sukari v. Akebono Brake Corp.*, 814 F. App'x 108, 112 (6th Cir. 2020) (quoting *Webb v. ServiceMaster BSC LLC*, 438 F. App'x 451, 454 (6th Cir. 2011)) (quotes omitted). Mr. Penny has not pointed the Court to any evidence regarding this element. Accordingly, the lack of evidence being produced on this element also dooms his prima facie case under the ADA.

#### d.      Reverse Race and Gender Discrimination (Count IV).

Counsel for Mr. Penny uses the term "reverse" discrimination to describe his race and gender discrimination claims. *See* Doc. 4; Doc. 52, PageID 1442. The Court emulates Mr. Penny's use of these terms, even though Title VII does not recognize "reverse" discrimination as a qualifier. Any charge of discrimination or disparate treatment by an employer of an employee based on race and sex are actionable under Title VII. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 278–79, (1976) ("[Title VII's] terms are not limited to discrimination against members of any particular race."). As Justice Marshall wrote for a

---

[9] Ms. Watson testified that she did not know he was a diabetic, despite what Mr. Penny states. Doc. 52-13, PageID 1645–46.

unanimous Court, Title VII "proscribe[s] racial discrimination in private employment against whites on the same terms as racial discrimination against nonwhites." *Id.* at 279. Simply put, "[t]he Act prohibits All racial discrimination in employment, without exception for any group of particular employees." *Id.* at 283.

As a threshold issue, the Court notes that Mr. Penny has failed to present any arguments in favor of his gender discrimination claim in response to Defendants' Motion for Summary Judgment. *See* Doc. 52, PageID 1442–50. The Sixth Circuit instructs that when "a plaintiff fails to address [a claim] in response to a motion for summary judgment" the plaintiff has "abandoned [that] claim." *Brown v. VHS of Mich.*, Inc., 545 F. App'x 368, 372 (6th Cir. 2013). Given Mr. Penny's abandonment of his reverse gender discrimination claim, the Court need not address it. Mr. Penny's only remaining so-called "reverse" discrimination claim concerns his race.

Mr. Penny does not have direct evidence of "reverse" race discrimination. When a plaintiff presents only indirect (circumstantial) evidence of disparate treatment based on race, the claim is analyzed under the burden-shifting approach of *McDonnell Douglas*, 411 U.S. at 802. As discussed above, indirect circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Alberty*, 730 F. App'x at 358.

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). At the summary judgment stage, a plaintiff's burden is merely to present evidence upon which "a reasonable jury could conclude

that the plaintiff suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Id.*

"The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he . . . suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 703 (6th Cir. 2007). To establish a prima facie case of discrimination under Title VII, Mr. Penny must present evidence that "1) he is a member of a protected class; 2) he was qualified for the job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of his protected class." *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014).

In "reverse discrimination" cases, the first and fourth steps are modified. At the first step, plaintiff must show "background circumstances to support the allegation that the defendant is the unusual employer who discriminates against the majority." *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004); *Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003); *Zambetti v. Cuyahoga Community College*, 314 F.3d 249, 255 (6th Cir. 2002). The fourth step has been stated in various ways based on the context of the case. *See Macy*, 484 F.3d at 365 (observing that there are many "context-dependent ways by which plaintiffs may establish a prima facie case"). In a disparate treatment employee discipline case, the Sixth Circuit instructs that a plaintiff must show his employer "treated differently similarly situated employees of a different race." *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008); *see also Leadbetter*, 385 F.3d at 690 (in a reverse discrimination failure to promote case,

plaintiff is required to show that the defendant "treated differently employees who were similarly situated but were not members of the protected class"); *Sutherland*, 344 F.3d at 614 (same).

Once the plaintiff establishes a prima facie case, the burden shifts to the defendants to offer a legitimate, non-discriminatory reason for the adverse employment action at issue. *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas*, 411 U.S. at 802). If the defendants meet this burden, the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext. *Id.* When the burden shifts back to the plaintiff, the plaintiff must come forward with evidence that the defendant's reason for the employment action is false. *Sutherland*, 344 F.3d at 615 (6th Cir. 2003). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit" a finding of unlawful discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

It is apparent from the record that Mr. Penny was qualified for his position and that he experienced an adverse employment action, given his years of experience as a kitchen assistant and dishwasher. Defendants argue that Mr. Penny "has no evidence showing that Cottingham is an employer that discriminates against the majority," and that he has not shown he was treated differently from similarly situated employees because of his race. Doc. 42, PageID 847–48. However, the Court finds that Mr. Penny's claim fails for a different reason: he has not pointed to any proof in the record that shows Cottingham's reason for firing him was pretextual.

Assuming *arguendo*, that Mr. Penny has met elements one and four of the *McDonnell Douglas* framework, the burden shifts to Cottingham to offer a legitimate nondiscriminatory

reason for terminating him. *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas*, 411 U.S. at 802). In the letter terminating Mr. Penny, Cottingham proffered Mr. Penny's unkempt dress and poor personal hygiene as reasons for his firing. Specifically, Cottingham stated that Mr. Penny's chronic poor hygiene violated Section V(C) of the employee handbook that required him to "maintain a neat, well-groomed appearance at all times." Doc. 52-9, PageID 1567. The letter of termination also indicated that Mr. Penny was given notice of this fact in his 2020 annual performance review, which states that he "cannot wear the same pants, shirts, and undershirts day after day," and that "residents and others have commented on [his] body odor and soiled shirts." *Id.* at PageID 1567–68; *see also* Doc. 52-6, PageID 1490. Mr. Penny's supervisor, Janet Miller, also reprimanded Mr. Penny for his poor hygiene in his 2019 annual performance review, requesting that he "bath/shower," "use deodorant," and "wear clean clothes" daily because colleagues and residents have made comments. Doc. 52-5, PageID 1485. Cottingham's documentation of Mr. Penny's hygiene issues is consistent.

Once Cottingham carried its burden of showing a legitimate nondiscriminatory reason for the termination, then the burden shifted back to Mr. Penny to demonstrate that the reason offered is pretextual. One court has framed the not often clear burden shifting rules in the context of a motion for summary judgment quite succinctly:

> [W]hen the burden has shifted back to the plaintiff, the plaintiff must show by a preponderance of the evidence each of two components of pretext: that the defendant's reasons (i) were not its true reasons and (ii) were instead actually a pretext for discrimination. *Kirilenko-Ison*, 974 F.3d at 661. To defeat a summary judgment motion in such circumstances, the plaintiff must produce sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer by a preponderance that the defendant intentionally discriminated against him. *Braithwaite*, 258 F.3d at 493.
>
> An employee can show pretext "by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment

action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014). "Whichever method the plaintiff employs, he always bears the burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him.'" *Clark v. Walgreen Co.*, 424 F. App'x 467, 474 (6th Cir. 2011) (quoting *Johnson*, 319 F.3d at 866).

*Smith v. PAM Transport, Inc.*, No. 3:21-cv-00262, 2024 WL 2097102, at *12 (M.D. Tenn. May 9, 2024). Putting these rules in context here, Mr. Penny, at this stage in the proceedings, has an obligation to offer enough evidence to perhaps convince a jury that Defendants stated reasons for his termination: (1) had no basis in fact to support Cottingham's claims; or (2) that the proffered explanation did not actually motivate Cottingham's decision; or finally (3) that the reasons stated by Cottingham were insufficient to warrant the decision to terminate him. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). He has done none of that.

The flaw in Mr. Penny's argument can be found in the fact that he has offered not a single thread of proof to demonstrate that the explanation for firing him given by Cottingham was motivated by racial animus. All signs point to Mr. Penny's poor hygiene and dress as the actual reasons for his termination. Nothing in the record shows that the decision by Cottingham to fire him was in fact a pretext to hide or conceal any form of "reverse discrimination" or had to do with anything else other than his habitually poor hygiene and manner of dressing throughout his employment, while ignoring numerous warnings from supervisors to change his behavior. Employers do not violate Title VII by enforcing policies that dictate that employees must maintain certain standards of hygiene and dress, especially when those policies are applied to kitchen workers such as occurred in this case. *See e.g., Noumoff v. Drive*, No. 1:20-cv-395, 2023 WL 1420331, at *7 (S.D. Ohio Jan. 31, 2023) (finding that the defendants established their burden of production of a legitimate, nondiscriminatory reason to terminate the plaintiff because the plaintiff's "[Employee] Handbook violations

[were] grounds for termination"). These were legitimate nondiscriminatory reasons for his termination which Mr. Penny has offered no evidence to rebut. And the Court is under no obligation to sift through the record to find evidence to support his theory—if it exists. *Parsons v. FedEx Corp.*, 360 F. App'x 642, 646 (6th Cir. 2010) ("A district court has no duty to sift through the record in search of evidence to support a party's opposition to summary judgment."). Penny's failure to provide evidence for the Court's consideration rebutting Cottingham's nondiscriminatory reason is fatal to his claim. Accordingly, the Court finds that summary judgment is appropriate on Mr. Penny's "reverse" race and gender discrimination claims.

### e.    Title VII Retaliation (Count V).

Penny also contends that Cottingham retaliated against him for complaining about its allegedly unlawful working conditions and treatment of him by supervisors. "Title VII prohibits retaliation against an employee 'because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' in connection with an allegedly unlawful employment practice." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 995 (6th Cir. 2009) (quoting 42 U.S.C. § 2000e-3(a)). To establish a prima facie case of retaliation, Mr. Penny must show that (1) he engaged in protected activity under Title VII; (2) Cottingham knew that he had exercised protected rights; (3) Cottingham thereafter took adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse employment action. *Id.* at 996 (quoting *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)). If Mr. Penny can establish his prima facie case, the burden shifts to Cottingham to provide a "legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. Should Cottingham do so, the burden of

production shifts back to Mr. Penny to demonstrate that Cottingham's proffered reason was a mere pretext for discrimination. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

Mr. Penny has not presented a prima facie case for discrimination because he has not shown he engaged in protected activity. Protected activity includes "opposing any practice that the employee reasonably believes to be a violation of Title VII . . . whether or not the challenged practice ultimately is found to be unlawful." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579-80 (6th Cir. 2000). The Sixth Circuit has interpreted "protected activity" broadly to include "complain[ts] to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices." *Id.* at 579.

Mr. Penny argues that he:

[E]ngaged in protected activity by doing his assigned duties as dishwasher as a Caucasian, male, disabled by diabetes, in a culture dominated by a black, female, who did not like Steven Penny and told new employees in the dishwasher room and kitchen location to "stay away from him", Watson "did not like him[,]" "he smelled, etc[.]

Doc. 52, PageID 1452. Penny also argues that he engaged in protected activity when he complained about a broken dishwasher. *Id.* at PageID 1451 (noting complaints made "for not repairing the leaky dishwasher").

Mr. Penny's alleged fulfillment of his dishwashing duties does not amount to opposition to any employer practice. This is not protected activity under Title VII. And, viewing the facts in the light most favorable to Mr. Penny, his complaints about a leaky dishwasher in no way relate to an unlawful employment practice. Mr. Penny has presented no evidence that his complaints about the dishwasher amount to even a vague charge of discrimination. *See Kenney v. Aspen Techs.*, Inc., 965 F.3d 443, 451 (6th Cir. 2020) (vague complaints about treatment of employees are not enough to establish a prima facie case of retaliation). "More is needed to establish a prima facie case of retaliation." *Id.*

Even if Mr. Penny had established a prima facie case of retaliation, the Court would reach the same conclusion. Cottingham produced an above-board reason for firing Mr. Penny: he had been repeatedly told to fix his poor personal hygiene but did not. In addition, Mr. Penny has not produced one iota of proof to show that Cottingham's reason for terminating him "has no basis in fact," "did not actually motivate the adverse action," or "was insufficient to motivate the adverse action." *Abbott*, 348 F.3d at 542. Accordingly, Mr. Penny's retaliation claim is completely without merit.

### f.   Wrongful Termination in Violation of Public Policy (Count VII).

Finally, Mr. Penny argues that he was wrongfully terminated in violation of Ohio public policy based on a disability under § 4112.02 of the Ohio Revised Code. Doc. 52, PageID 1455. This claim fails as a matter of law.

To state a claim for wrongful discharge in violation of public policy, Mr. Penny must establish four elements:

(1) that a clear public policy existed and was manifested either in a state or federal constitution, statute or administrative regulation or in the common law ("the clarity element"),

(2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy ("the jeopardy element"),

(3) the plaintiff's dismissal was motivated by conduct related to the public policy ("the causation element"), and

(4) the employer lacked an overriding legitimate business justification for the dismissal ("the overriding-justification element").

*Miracle v. Ohio Dep't of Veterans Servs.*, 137 N.E.3d 1110, 1113 (Ohio 2019) (citing *Collins v. Rizkana*, 652 N.E.2d 653, 657–58 (Ohio 1995)). The first two elements are questions of law while the last two are questions of fact. *Id.*

For Mr. Penny to establish the jeopardy element (element two), he must demonstrate that there is no other remedy available. *Day v. Nat'l Elec. Contractors Ass'n*, 82 F. Supp. 3d 704, 707–08 (S.D. Ohio 2014). As the Supreme Court of Ohio has instructed:

> An analysis of the jeopardy element necessarily involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful discharge claim. . . . Where, as here, the sole source of the public policy opposing the discharge is a statute that provides the substantive right and remedies for its breach, "the issue of adequacy of remedies" becomes a particularly important component of the jeopardy analysis. . . . Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.

*Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 531 (Ohio 2002). This Court has long followed the rule established by its earlier holding that "it is well-established that wrongful discharge in violation of state public policy claims fail where other statutes provide adequate protection and remedies." *Chenzira v. Cincinnati Children's Hosp. Med. Ctr.*, No. 1:11-CV-00917, 2012 WL 6721098, at 4 (S.D. Ohio Dec. 27, 2012). Accordingly, the Court need not belabor the application of these elements because Mr. Penny cannot meet the jeopardy element.

Indeed, this Court previously considered a nearly identical issue in *Waldron v. Wal-Mart, Inc.*, No. 2:20-cv-06272, 2021 WL 3367540, at *4–5 (S.D. Ohio Aug. 3, 2021). In *Waldron*, the Court dismissed the plaintiff's wrongful termination in violation of public policy claim on the basis of race, because "Chapter 4112 [of the Ohio Revised Code] provides an adequate remedy for race discrimination in employment." *Id.* at *4. The same is true for disability discrimination cases addressed under § 4112.02 of the Ohio Revised Code.[10] Ohio

---

[10] Several Ohio courts have declined to recognize claims for wrongful discharge based on the public policy expressed in Ohio Revised Code § 4112 on the grounds that the remedies under § 4112 provide sufficient relief to vindicate the policy goals set forth in that statute. *See e.g., Barlowe v. AAAA Int'l Driving Sch., Inc.*, No. 19794, 2003-Ohio-5748, 2003 WL 22429543 (Ohio Ct. App. Oct. 24, 2003) (affirming summary judgment on a claim of wrongful discharge based on the public policy against disability discrimination expressed in § 4112 on the

Rev. Code § 4112.02 (prohibits an employer from discriminating against an employee on the basis of "disability"); *see also Hayest v. Cleveland Clinic Found.*, No. 1:06 CV 0020, 2006 WL 8454570, at *2 (N.D. Ohio June 12, 2006) ("Because § 4112 provides adequate relief [for disability discrimination], Plaintiff's cause of action for wrongful discharge in violation of public policy must be dismissed.").

Because § 4112.02 of the Ohio Revised Code provides adequate relief for disability discrimination, Mr. Penny's claim for wrongful discharge in violation of public policy fails as a matter of law and must be dismissed.

## V.    CONCLUSION

For the reasons stated, the Court **GRANTS** Defendants' Partial Motion to Dismiss (Doc. 10) and Motion for Summary Judgment (Doc. 42) and **DISMISSES** Plaintiff Steven Penny's Amended Complaint (Doc. 4) **WITH PREJUDICE**. Further, the Court notes that there have been several improper, unique, or non-dispositive motions filed during the pendency of this suit. The Court **DENIES** the following motions as **MOOT**:

- Plaintiff's Motion for Finding of Intentional Tort (Doc. 13);

- Defendants' Motion to Strike Errata Sheet (Doc. 27);

- Defendants' Motion to Exclude the Testimony of Plaintiff's Expert Witness (Doc. 30);

- Plaintiff's Motion for Leave to file a Second Amended Complaint (Doc. 39);

- Plaintiff's Motion to Amend/Correct (Doc. 40); and

---

grounds that the statute provides adequate relief); *Lewis v. Fairview Hosp.*, 806 N.E.2d 185 (Ohio Ct. App. 2004) (race discrimination); *Thaman v. Ohiohealth Corp.*, No. 2:03 CV 210, 2005 WL 1532550 (S.D. Ohio June 29, 2005) (sex discrimination).

- Plaintiff's Motion to File Text Searchable Documents (Doc. 41).

Accordingly, the Court **ORDERS** the clerk to **ENTER JUDGMENT** and **TERMINATE** this matter from the docket.

**SO ORDERED**

August 22, 2024

Jeffery P. Hopkins
United States District Judge